IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Hospital Internists of Austin, P.A. and Hospital Internists of Texas, | § § § | |
| | § | Civil Action No. 1:18-cv-00-466 |
| Plaintiffs, | § § | JURY DEMANDED |
| v. | § § | |
| Quantum Plus, LLC d/b/a TeamHealth West and d/b/a TeamHealth Hospital Medicine West; Team Health, LLC; and AmeriTeam Services, LLC, | § § § § § § | |
| Defendants. | § | |

## PLAINTIFFS' RESPONSE TO OPPOSED MOTION TO STRIKE THE EXPERT REPORT AND TESTIMONY OF PLAINTIFFS' EXPERT, MICHAEL KREAGER

Defendants Quantum Plus, LLC ("Quantum"), and AmeriTeam Services, LLC (jointly "Defendants") mischaracterize the scope of Plaintiffs' expert, attorney Michael Kreager, in an effort to push his testimony into "inadmissible" territory. Mr. Kreager's testimony involves interpretation of Section 24 of the Services Agreement based on industry standards and interpreting mixed questions of fact and law related to the prohibition on the corporate practice of medicine ("CPOM") based on industry standards. Federal courts in this jurisdiction have repeatedly found both of these categories of opinions to be admissible.

FACTUAL BACKGROUND

Mr. Kreager has practiced business and tax law in Texas on a full-time basis for forty years. He spends approximately forty percent of his time representing physicians and physician owned entities in contracting and other health care law matters. Beginning in the mid-1990s, he began representing physician entities in "selling" their practices to national management companies, in which the physician entities entered into long term management agreements with

1

national management companies. He has authored several books and articles related to legal issues in healthcare. Doc. 99-2 at 23–24.

Mr. Kreager testifies, in relevant part, that based on his experience advising healthcare entities:

> In my experience, contracting parties regularly include in their contract a provision that they will comply with all laws. Management services contracts between business organizations that are not licensed to practice medicine in Texas and physician organizations owned by physicians holding Texas medical licenses contain a section similar to Section 24, in which the parties agree to comply with all "applicable statutes, rules and regulations." In the case of Section 24, the CPOM falls within such statutes, rules and regulations.
>
> The language in Section 24 is not unique. I have reviewed dozens of similar management services contracts between similarly situated parties, and those contracts require the parties to comply with all applicable laws, particularly the CPOM.
> . . . .
> Because the CPOM is an inherent concern of any management services agreement between medical-licensed and non-medical licensed parties, it only follows that CPOM is an "applicable law, statute, regulation, and rule" with which the parties must comply.

Doc. 99-2 at 24–25.

Mr. Kreager also offers opinions regarding, in his experience, what types of factual acts and omissions constitute factors to consider when determining whether a CPOM violation has occurred, without reaching any ultimate conclusion regarding whether Defendants have indeed committed a violation of the prohibition on CPOM:

> Control over the employment of physicians has consistently been a crucial aspect of the CPOM decisions.
> . . . .
> Interference from non-licensed persons [with physicians' independent medical judgment] has fundamentally been a consideration in CPOM violation cases.
> . . . .
> A non-licensed entity's control of the fees for professional services, as well as the retention of profit from those services, has also been an integral issue in the analysis of a violation of the CPOM.

DocID: 4819-0928-5540.1

Doc. 99-2 at 25–26. Mr. Kreager does not offer ultimate legal conclusions regarding Defendants' actions themselves, rather, he lists the alleged acts and omissions, analyzes the relevant legal standards, and states that if those actions occurred, he would be concerned that there was a violation of the prohibition on CPOM and he would advise a client to reconsider its contractual relationship with a non-licensed party such as Quantum. Doc. 99-2 at 25–26.

Contrary to Defendants' mischaracterization of his testimony, Mr. Kreager also does not testify that Plaintiffs should prevail "[e]ven if the allegations are not true." Defendants' Motion to Strike at 3. Rather, over Plaintiffs' counsel's objection that this ultimate issue is "outside the scope of what Mr. Kreager was retained for," he testified as follows:

> 16· · · · Q.· ·Do you have an opinion as to what party should prevail
> 17· ·in this matter?
> 18· · · · · · · MS. HOLLOWAY:· Objection.· I think that's outside
> 19· ·the scope of what Mr. Kreager was retained for.· But you can
> 20· ·answer.
> 21· · · · A.· ·Yes.· I think the plaintiff should prevail.
> 22· · · · Q.· ·And why do you think the plaintiff should prevail?
> 23· · · · A.· ·Because I have read the Second amended Petition or
> 24· ·Complaint, and if the statements in there are true, I believe
> 25· ·that it supports their request for relief.
> Page 11
> ·1· · · · Q.· ·And if the statements in there are not true, do you
> ·2· ·still think the plaintiff should prevail?
> ·3· · · · A.· ·**I'd have to leave that to the jury and the judge.**

Doc. 99-2 at 4 (Kreager Depo. 10:16–11:3) (emphasis added). Mr. Kreager understands that he cannot tell the jury and judge what to do. Rather, his role is to testify regarding legal matters related to the Services Agreement and CPOM because those matters are intertwined with questions of fact.

3

## LEGAL STANDARD

The party offering the expert testimony has the burden of establishing that it is admissible under Rule 702 and the *Daubert–Kuhmo* standard. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *see also Mathis v. Exxon Corp.*, 302 F.3d 448, 459–460 (5th Cir. 2002). "Notwithstanding the dictates of *Daubert* and its progeny, 'the rejection of expert testimony is the exception rather than the rule." *Thomas v. Deloitte Consulting LP*, 2004 WL 1960097, *2 (N.D. Tex. Sept. 2, 2004) (quoting Fed. R. Evid. 702, Adv. Comm. Notes (2000)). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land, More or Less, Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

## ARGUMENT & AUTHORITIES

Defendants do not challenge Mr. Kreager's qualifications or skill. Rather, they challenge his ability to render opinions regarding interpretation of the Services Agreement, and his analysis of the acts and omissions that can constitute a violation of the prohibition on the CPOM. Defendants attempt to mischaracterize Mr. Kreager's testimony as pure legal opinion, but the nuances between permissible and impermissible law-related testimony are key. Both of Mr. Kreager's opinions are permissible exceptions because they both involve the analysis of facts intertwined with the law.

DocID: 4819-0928-5540.1

A.     ***Experts are permitted to testify regarding industry standards for contract interpretation.***

Federal courts allow experts to testify regarding the meaning of contract terms when the meaning depends on trade practice. *Kona Tech. Corp v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 279–80 (5th Cir.1987). Stated another way, "testimony regarding industry practice that sheds light on the intent of parties to a contract is admissible and relevant testimony." *Isbell v. DM Records, Inc.*, 2012 WL 13005933, at *4 (E.D. Tex. Feb. 3, 2012) (citing *Huddleston v. Herman & MacLean*, 640 F.2d 534, 552 (5th Cir. 1981), aff'd in part, rev'd in part on other grounds, 459 U.S. 375 (1983)). "While an expert is not in a better position than the jury to draw conclusions regarding a person's state of mind . . . he may testify to industry custom as it illuminates the parties' intent regarding a contract." *Id.* (internal citation omitted).

In *Huddleston v. Herman & MacLean*, 640 F.2d at 552, the Fifth Circuit permitted the plaintiffs' expert witness, a lawyer, to testify concerning the interpretation in the securities industry of boilerplate language in a prospectus. *Id.* The attorney expert testified that a certain statement regarding the high degree of risk associated with the securities in the prospectus was standard language used in these types of documents. *Id.* This testimony was used to prove whether the customary treatment of that language in the document was such that the defendants, who included the language, were likely to have believed it would negate misleading effects of cost estimates in the prospectus. *Id.*

Similarly here, Mr. Kreager testifies that in his experience in dealing with management services contracts between business organizations not licensed to practice medicine in Texas and physician organizations, CPOM falls within the routine contractual promise to comply with all "applicable statutes, rules and regulations." Doc. 99-2 at 24. He continues that Section 24 of the

5

Services Agreement is not unique, and he has reviewed dozens of similar agreements between similar parties. *Id.* He concludes that:

> Because the CPOM is an inherent concern of any management services agreement between medical-licensed and non-medical licensed parties, it only follows that CPOM is an "applicable law, statute, regulation, and rule" with which the parties must comply.

Doc. 99-2 at 24–25. This opinion is not an opinion on the ultimate conclusion of whether Defendants violated the Services Agreement by engaging in the CPOM. Rather, it is an opinion regarding custom and usage in connection with the interpretation of the contract's terms.

This type of expert opinion is routinely admitted:

- *Toren v. Braniff, Inc.*, 893 F.2d 763,765–66 (5th Cir. 1990) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)): Expert testimony regarding industry custom showed parties to agreement did not intend to agree to certain terms.

- *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, No. A-01-CA-186-JN, 2002 WL 34443530, at *3 (W.D. Tex. Sept. 27, 2002): Attorney expert may testify regarding whether certain document is a contract, what the document's terms mean, what terms are not contained in the document, whether there was consideration, and whether ethical duties were complied with.

- *Mescalero Energy, Inc. v. Underwriters Ind. Gen. Agency, Inc.*, 56 S.W.2d 313, 322 (Tex. App.—Houston [1st Dist.] 2001, pet. denied): Industry custom and reasonable definition of an industry term can be established through expert testimony.

- *WH Smith Hotel Servs. v. Wendy's Int'l, Inc.*, 25 F.3d 422, 429 (7th Cir. 1994) (district court properly admitted expert testimony regarding custom and usage in connection with interpretation of an ambiguous provision of an operating agreement).

B.   ***Experts are permitted to testify regarding interpretation of law as applied to facts.***

The Fifth Circuit has stated, "merely being a lawyer does not disqualify one as an expert witness. Lawyers may testify as to legal matters when those matters involve questions of fact." *Askanase*, 130 F.3d at 672–73 (citing *Huddleston v. Herman & MacLean*, 640 F.2d 534, 552 (5th Cir. 1981), *aff'd in part, rev'd in part on other grounds* 459 U.S. 375 (1983)).

6

In *U.S. ex rel. Barron v. Deloitte & Touche, LLP*, 2008 WL 7136868, at *2 (W.D. Tex. Sept. 26, 2008), a False Claims Act *qui tam* case, the Court permitted the defendants' expert to testify regarding her interpretation of the Medicaid rules and regulations. Specifically, she was permitted to testify that: (1) the government has previously audited the same billing approach used by the defendants and found that approach was not fraudulent; and (2) the government has previously found that the same lack of documentation defendants suffer from does not constitute Medicaid fraud. *Id.* The Court found neither of these opinions purports to tell the trier of fact that the defendants did or did not violate state and/or federal law, but rather, assists the trier of fact by proving the expert's opinions as to her interpretation of the law. *Id.*

In another case, *GWTP Investments, L.P. v. SES Americom, Inc.*, 2007 WL 7630459, at *16 (N.D. Tex. Aug. 3, 2007), an expert detailed in her report statutes and regulations applicable to contractual novation and offered her concerns about how they would apply to the plaintiff in its quest to novate contracts. The Court found her opinion similar to the expert opinion in *Waco International, Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 533 (5th Cir. 2002). In *Waco International*, Fifth Circuit found no error in allowing an attorney to testify as to issues an attorney typically investigates in determining whether to pursue an ex parte seizure order. *Id.* (citing *Waco International*, 278 F.3d at 533). Similarly, in *GWTP Investments*, the expert was permitted to opine on questions an attorney typically discusses with a client in evaluating a client's potential success in obtaining a novation of government contracts. *Id.* She was also permitted to offer opinions "as if she had been retained by GWTP to advise them on the process and opines as to the likelihood of the company's success." *Id.* The Court explicitly noted, "Although Simmons's opinion necessarily addresses the law pertaining to novation and opines as

7

to its possible effect on GWTP's chances of retaining Verestar's government contracts, such opinion does not cross the line into the province of the court or the jury." *Id.*

Here, Mr. Kreager's report does not state Defendants' conduct was indeed a violation of the CPOM, but rather, "assists the trier of fact by providing [Mr. Kreager's] opinions as to [his] interpretation of federal and/or state law." *See U.S. ex rel. Barron*, 2008 WL 7136868, at *2. Specifically, Mr. Kreager lays out different legal factors that are considered when analyzing whether a CPOM violation has occurred and the types of facts that can support such a violation. *Id.* He also necessarily addresses the relevant CPOM law that should be assessed when evaluating a contract such as the Services Agreement. *See GWTP Investments*, 2007 WL 7630459, at *16. His final conclusion is that he would advise a client to reconsider its contractual relationship with a non-licensed party such as Quantum. Doc. 99-2 at 26. *Id.* (permitting expert to offer opinion regarding what she would advise party if she was attorney for party). Mr. Kreager's opinions regarding the legal standards for CPOM and facts that would constitute CPOM is therefore admissible.

Finally, regarding Defendants' argument that Mr. Kreager's opinions are based on the allegations in the First Amended Complaint alone, this question goes to weight—not admissibility. Defendants can exploit any perceived flaws in Mr. Kreager's report and opinions through vigorous cross examination. *See, e.g., Daubert*, 509 U.S. at 596.

## CONCLUSION

In sum, Mr. Kreager's testimony involves interpretation of Section 24 of the Services Agreement based on industry standards and interpreting mixed questions of fact and law related to the prohibition on the corporate practice of medicine ("CPOM") based on industry standards.

8

Federal courts in this jurisdiction have repeatedly found both of these categories of opinions to be admissible. Plaintiffs therefore respectfully request Defendants' Motion be denied.

    Respectfully submitted,

    By: /s/ *Lorinda Holloway*
    Lorinda Holloway
    State Bar No. 00798264
    Lorinda.Holloway@huschblackwell.com
    Kevin Koronka
    State Bar No. 24047422
    Kevin.Koronka@HuschBlackwell.com
    Danielle Gilbert
    State Bar No. 24092421
    Danielle.Gilbert@HuschBlackwell.com

    HUSCH BLACKWELL, LLP
    One Congress Plaza
    111 Congress Avenue, Suite 1400
    Austin, Texas 78701-4093
    Telephone: (512) 472-5456
    Telecopier: (512) 479-1101

    **ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document was served upon all counsel of record via the Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure on September 6, 2019.

/s/ *Lorinda Holloway*
Lorinda Holloway

John C. Dunne
jdunne@smfadlaw.com
George A. Shannon
gshannon@smfadlaw.com
SHANNON, MARTIN, FINKELSTEIN, ALVARADO & DUNNE
A Professional Corporation
1001 McKinney Street, Suite 1100
Houston, TX 77002
(713) 646-5500 (Phone)
(713) 752-0337 (Fax)

**ATTORNEYS FOR QUANTUM PLUS, LLC D/B/A TEAMHEALTH HOSPITAL MEDICINE WEST, TEAM HEALTH, LLC, AND AMERITEAM SERVICES, LLC**

10

DocID: 4819-0928-5540.1