IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HOSPITAL INTERNISTS OF AUSTIN, P.A., and HOSPITAL INTERNISTS OF TEXAS, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:18-CV-466-RP |
| QUANTUM PLUS, LLC, *formerly known as* QUANTUM PLUS, INC., *d/b/a* TEAMHEALTH HOSPITAL MEDICINE WEST, TEAM HEALTH, LLC, *formerly known as* TEAM HEALTH, INC., and AMERITEAM SERVICES, LLC, | § § § § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Plaintiffs Hospital Internists of Austin, P.A. ("HIA") and Hospital Internists of Texas' ("HIT") (collectively, "Plaintiffs") motion for leave to join Lonestar Hospital Medicine, PA ("Lonestar") as a defendant. (Dkt. 88). Quantum Plus, LLC ("Quantum") and Ameriteam Services, LLC ("Ameriteam") (collectively, "Defendants"), filed a response. (Dkt. 92). Having considered the parties' submissions, the applicable law, and the record, the Court finds the Plaintiffs' motion to join Lonestar should be granted.

### I. BACKGROUND

Defendants Quantum and Ameriteam are foreign limited liability companies that provide medical staffing services to hospitals. (Am. Compl., Dkt. 91, at 2–4). To ensure sufficient medical staffing for their hospital clients, Defendants either acquire emergency and hospitalist groups directly or enter into independent contracts with them. (*Id.* at 4). HIA is a physician-owned and physician-managed group based in Texas. (*Id.* at 3–4). HIT is a nonprofit health organization also with its principal place of business in Texas that provides certain professional medical services on

1

behalf of HIA. (*Id.* at 4). HIA entered into a staffing contract (the "Services Agreement") with Quantum to provide staffing to St. David's Healthcare Partnership, LP's ("St. David") facilities. Shortly after, Quantum assigned "all of its rights, duties, and obligations" under the Service Agreement to Lonestar. (Mot. Joinder, Dkt. 88, at 4). Lonestar is a nondiverse, Texas entity. (*Id.* at 5).

While all three entities—HIA, Quantum, and Lonestar—executed the Assignment in January 2015, Plaintiffs allege the signatories did not recall the Assignment until it surfaced during discovery. (*Id.* at 2). Plaintiffs previously filed a motion for determination under Rule 19 asking the Court to determine whether Lonestar is a required party. (Mot. Determination, Dkt. 79). At that time, Plaintiffs had not moved to join Lonestar as a defendant and Defendants had not moved to dismiss Plaintiffs' claims for failure to join a required party. (*Id.*; Resp., Dkt. 82). Both parties avoided taking a position on whether Lonestar was a required or indispensable party at all. (Order, Dkt. 85, at 2). Accordingly, the Court declined to sua sponte join Lonestar to the litigation or render an advisory opinion as to whether it was a necessary party but noted that Plaintiffs "may file a motion to join Lonestar if they believe it is a required party." (*Id.*).

Plaintiffs then filed their motion for leave to join Lonestar. (Mot. Joinder, Dkt. 88). Plaintiffs contend that Lonestar is a necessary party because "it is a party to the contract at issue in this breach of contract case." (*Id.* at 4). Defendants are not opposed to joinder and note in their response that "to the extent Plaintiffs want to join Lonestar, they are free to do so." (Resp., Dkt. 92, at 3). Defendants even note that they offered to sign "an agreed order allowing the addition of Lonestar" to the litigation, but Plaintiffs declined. (*Id.*). Despite the apparent agreement between the parties over joinder, Defendants nevertheless contend Plaintiffs' motion for joinder should be denied because it is untimely, does not present a complete picture of the claims Plaintiffs intend to assert against Lonestar, and Plaintiffs did not attach a proposed amended complaint to their motion for

leave to join Lonestar. (*Id.* at 3–15). Defendants also contest Plaintiffs' decision to pursue court involvement, noting that "[i]f Plaintiffs want Lonestar to be a party, then Plaintiffs need to dismiss this case and refile in state court." (*Id.* at 7).

The Court notes that this motion for joinder presents an unusual procedural posture. Plaintiffs originally filed this lawsuit in federal court. (Compl., Dkt. 1). Plaintiffs now move to join Lonestar to the litigation as a necessary and indispensable party under Federal Rule of Civil Procedure 19, knowing that joinder would destroy diversity and their own choice of forum. (Mot. Joinder, Dkt. 88, at 5). Defendants' lack of substantive opposition to joinder only adds to this case's peculiar posture. (Resp., Dkt 92, at 2–3). Within this context, the Court must decide whether to grant Plaintiffs' motion to join Lonestar, a nondiverse entity, which would require dismissal for lack of subject-matter jurisdiction.

## II. DISCUSSION

Federal Rule of Civil Procedure 19 states that a party must be joined if "the court cannot accord complete relief among the existing parties" in that party's absence. Ordinarily, the party advocating joinder bears the burden of demonstrating that a missing party is necessary. *Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009). Once a movant shows that a "possibly necessary party is absent," the burden shifts to the opposing party to dispute that finding. *Id.* If the absent party is necessary, but it "cannot be joined without destroying subject-matter jurisdiction, the court must then determine whether that person is 'indispensable,' that is, whether litigation can be properly pursued without the absent party." *Id.* If an indispensable party cannot be joined without destroying subject-matter jurisdiction, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

As the party advocating joinder, Plaintiffs bear the initial burden of demonstrating that Lonestar is a necessary party. *Hood,* 570 F.3d at 628. Plaintiffs begin their motion for joinder by arguing that Lonestar is "an absent necessary party" because "it is a party to the contract at issue in this breach of contract case." (Mot. Joinder, Dkt., 88, at 4). Specifically, Plaintiffs contend that Quantum assigned "all of its rights, duties and obligations" under the Services Agreement at issue in this case to Lonestar shortly after HIA and Quantum entered into the agreement. (*Id.*). In their prior motion for determination under Rule 19, Plaintiffs stated that "[a] judgment rendered in Lonestar's absence will be prejudicial to Plaintiffs because the very entity charged, via the Assignment, with exercising all duties under the Services Agreement (including those that form the basis of the suit) will not be present and subject to potential liability." (Mot. Determination, Dkt. 79, at 6).

Once Plaintiffs have sufficiently demonstrated that a "possibly necessary party is absent," the burden shifts to the opposing party to dispute that finding. *Hood,* 570 F.3d at 628. Here, Defendants do not oppose joining Lonestar. (Resp., Dkt. 92, at 2–3). While Plaintiffs styled their joinder motion as opposed, Defendants repeatedly insist that they do not oppose joinder at all. (*Id.*). Defendants maintain they "have not taken the position that they oppose joinder," that "[t]he problem is not that Defendants oppose joinder, but rather federal court jurisdiction does not allow joinder," and that "to the extent Plaintiffs want to join Lonestar, they are free to do so." (Resp., Dkt. 92, at 3). Moreover, both parties agree that Defendants offered to sign an agreed order allowing the addition of Lonestar to the litigation.[1] (Resp., Dkt. 92, at 3; Pls.' Reply, Dkt. 94, at 2 n.2).

Given the procedural posture of this case and Defendants' lack of substantive opposition to joinder, the Court declines to make a Rule 19 finding about whether Lonestar is an indispensable party. As an initial matter, the burden-shifting framework under Rule 19 envisions a dispute between

---

[1] Plaintiffs note that Defendants only agreed to an order adding Lonestar to the litigation after they filed their motion. (Pls.' Reply, Dkt. 94, at 2 n.2). Timeline aside, the point is the same: Defendants are unopposed to joining Lonestar as a party to this case.

4

the parties over joinder. *Hood*, 570 F.3d at 628 ("While the party advocating joinder has the initial burden of demonstrating that a missing party is necessary, after an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder."). Defendants have not taken the position that they oppose joinder and therefore do not dispute Plaintiffs' assertion that Lonestar is a necessary party. (Resp., Dkt. 92, at 7). The procedural posture of this case only adds to the peculiarity of this Rule 19 motion. In the instant case, *Plaintiffs* have moved for joinder pursuant to Rule 19. (Mot. Joinder, Dkt. 88, at 1). Rule 19 issues are ordinarily raised "either by pre-answer motion or by inserting the defense of nonjoinder in the answer itself." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1609 (3d ed. 2019). "Typically, the motion will be made under Rule 12(b)(7), which specifically refers to the defense of 'failure to join a party under Rule 19.'" *Id.* Defendants in this case have not moved to dismiss Plaintiffs' claims for failure to join a required party, the typical posture for a Rule 19 analysis. (Resp., Dkt. 92). Thus, this is not a compulsory joinder issue under Rule 19 wherein the Court must decide whether to require joinder against the Plaintiffs' will. Wright & Miller, *Federal Practice and Procedure* at § 1602 (explaining the purpose and construction of Rule 19 and noting that "[c]ompulsory joinder is an exception to the general practice of giving plaintiff the right to decide who shall be the parties to a lawsuit."). Given Defendants' lack of substantive opposition to joinder and the atypical procedural posture of this case, the Court sees no reason to proceed through the burden-shifting analysis required under Rule 19.

Moreover, the Court does not find it necessary to make a determination about whether Lonestar is an indispensable party to resolve Plaintiffs' joinder motion. When a party seeks to join a nondiverse defendant after removal, the Fifth Circuit has concluded that the competing interests at play are "not served by a rigid distinction [as to] whether the proposed added party is an

indispensable or permissive party." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).[2] Instead, when confronted with an amendment to add a nondiverse party, the district court "should use its discretion in deciding whether to allow that party to be added." *Id.* In making this determination, the court should balance two competing interests. *Id.* On the one hand, the court should note "the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources." *Id.* On the other hand, the court should consider that "the diverse defendant has an interest in retaining the federal forum." *Id.* In weighing these two interests, the court should consider (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction"; (2) "whether [the] plaintiff has been dilatory in asking for amendment"; (3) "whether [the] plaintiff will be significantly injured if amendment is not allowed"; and (4) "any other factors bearing on the equities." *Id.* In determining whether to allow joinder of nondiverse Lonestar, the Court will examine each of the *Hensgens* factors in turn.[3]

The first *Hensgens* factor, whether Plaintiffs' primary purpose in seeking to join Lonestar is to defeat diversity jurisdiction, militates in favor of granting the joinder motion. There is no evidence to suggest that Plaintiffs brought this motion to defeat federal jurisdiction. Plaintiffs' reluctance to relinquish the federal forum is clear from their motions. (Mot. Determination, Dkt. 79 (seeking a

---

[2] The Court notes again that the procedural posture presented here is relatively unusual and differs from the situation in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987). In *Hensgens*, the plaintiff initially filed her lawsuit in state court. *Id.* at 1180. Defendant removed the case to federal court on the basis of diversity. *Id.* After removal, the plaintiff moved to amend her complaint to add a nondiverse defendant. *Id.* Here, Plaintiffs initially filed their lawsuit in federal court and now seek to add a nondiverse defendant that would destroy diversity and require dismissal. (Compl., Dkt. 1; Mot. Joinder, Dkt. 88). While the procedural postures of the cases differ, the Court finds the competing interests at stake in *Hensgens* are likewise at stake here and will balance the interests accordingly.

[3] While the *Hensgens* factors are typically examined in determining whether to allow joinder of a party under 28 U.S.C. § 1447(e)—that is, when, *after removal* the plaintiff seeks to join additional defendants whose joinder would destroy subject-matter jurisdiction—the Court concludes that the *Hensgens* factors should nevertheless govern the analysis here. Granting Plaintiffs' motion to join Lonestar as a defendant would destroy diversity and this Court's subject-matter jurisdiction. Despite this case's peculiar procedural posture—Plaintiffs chose the federal forum and now seek through their joinder motion to destroy diversity jurisdiction—the same competing interests of maintaining the federal forum and avoiding parallel litigation exist here.

determination under Rule 19 about whether Lonestar is a required party rather than moving for joinder); (Mot. Joinder, Dkt. 88, at 6–7 (listing legal factors the Court should consider in determining whether Lonestar is an indispensable party under Rule 19, but declining to take a consistent position about whether Lonestar is an indispensable party); (Pls.' Reply, Dkt. 94, at 2 ("Plaintiffs should not have to voluntarily destroy subject-matter jurisdiction merely because Defendants will now agree to the joinder of Lonestar."[4])). Instead, it appears Plaintiffs seek to join Lonestar to ensure they can recover complete relief. (Mot. Joinder, Dkt. 88, at 6). Specifically, Plaintiffs note that even if Quantum and Lonestar are jointly and severally liable on the Services Agreement,[5] Plaintiffs might not be able to recover attorney's fees under current Texas law[6] from Quantum, a limited liability corporation ("LLC"). Because the record indicates that Plaintiffs' primary purpose in joining Lonestar is not to destroy subject-matter jurisdiction, but instead to ensure they can obtain complete relief, the first *Hensgens* factor weighs in favor of granting Plaintiffs' joinder motion.

The second *Hensgens* factor, whether Plaintiffs were dilatory in seeking to join Lonestar, is a closer call, but also weighs in favor of granting Plaintiffs' motion. Plaintiffs filed their motion for joinder on August 7, 2019, well after the January 25, 2019 joinder deadline. (Mot. Joinder, Dkt. 88; Scheduling Order, Dkt. 39). Therefore, Plaintiffs' delay would normally weigh against granting their motion for joinder. But this Court's July 25, 2019 Order invited Plaintiffs to file a motion to join

---

[4] Plaintiffs chose to move for joinder, included Lonestar as a party in the amended complaint attached to their reply brief, and added Lonestar as a party to their Third Amended Complaint currently pending before this Court. (Mot. Joinder, Dkt. 88; Pls.' Reply, Dkt. 94-1, at 1; Mot. File Third Am. Compl., Dkt. 108, at 1). Plaintiffs were never compelled to move for joinder.

[5] Plaintiffs suggest Quantum and Lonestar are jointly and severally liable on the Services Agreement under Texas law because the Assignment "did not expressly release Quantum of liability." (Mot. Joinder, Dkt. 88, at 5).

[6] Under Texas law, "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs" on a breach of contract claim. Tex. Civ. Prac. & Rem. Code § 38.001(8). The Texas Supreme Court has yet to conclusively say whether a party may recover attorney's fees from unincorporated entities like Quantum. However, in *Hoffman v. L & M Arts*, 838 F.3d 568, 583 n.14 (5th Cir. 2016), the Fifth Circuit referred to a Texas Court of Appeals case in support of the district court's *Erie* guess that an LLC was not an "an individual or corporation under section 38.001(8)." *Id.* at 583. Based on this reasoning, Plaintiffs may not be able to recover attorney's fees against Quantum.

Lonestar if they believed Lonestar to be a required party. (Order, Dkt. 85, at 2 ("Plaintiffs may file a motion to join Lonestar if they believe it is a required party.")). Plaintiffs filed their motion to join Lonestar less than two weeks later. (Mot. Joinder, Dkt. 88). The Court will therefore view Plaintiffs' motion as a timely response to the Court's invitation and consider the second *Hensgens* factor as weighing in favor of joinder.

The third *Hensgens* factor, whether the Plaintiffs would be prejudiced by denying leave to join Lonestar, is another close call, but ultimately weighs in favor of joinder. In assessing this factor, courts have looked to a number of considerations, including whether the plaintiff could recover against the already named diverse defendant, *Irigoyen v. State Farm Lloyds*, No. CA-C-03-324-H, 2004 WL 398553, at *5 (S.D. Tex. Jan. 5, 2004) and whether the possibility of a separate state court proceeding would result in inefficient parallel proceedings. *Bienaime v. Kitzman*, No. CIV. A. 00-284, 2000 WL 381932, at *5 (E.D. La. Apr. 12, 2000). Here, Plaintiffs and Defendants appear to agree that under the prevailing interpretation of Texas law, a person cannot recover attorney's fees on a breach of contract case from unincorporated entities like Quantum. Tex. Civ. Prac. & Rem. Code § 38.011(8).[7] Under this interpretation of section 38.011(8), Plaintiffs could not recover attorney's fees for their breach of contract claim from Quantum, the existing Defendant on their breach of contract claim. *Id.* As for the potential for parallel litigation, Defendants contend that Plaintiffs plan to file a separate lawsuit in state court against Lonestar, irrespective of this Court's ruling. (Resp. Dkt. 92, at 6; Letter Agreement., Dkt. 92-6, at 1–2). As Defendants note, two parallel lawsuits arising from the same set of facts would "be a waste of judicial resources" and "could lead to possible inconsistent obligations." (Resp., Dkt. 92, at 7). Accordingly, the Court concludes the third *Hensgens* factor weighs in favor of joinder.

---

[7] *See supra* note 6.

The final *Hensgens* factor requires an analysis of other equitable factors. Given the unique procedural posture of the case, the Court finds that an examination of the equities further tilts the balance in favor of granting Plaintiffs' joinder motion. Plaintiffs initially filed this lawsuit in federal court and chose to file this motion to join a nondiverse defendant knowing full well that joinder would destroy this Court's jurisdiction. (Mot. Joinder, Dkt. 88, at 5 ("Lonestar is a Texas entity and its joinder will destroy complete diversity.")). While Defendants have a stated interest in litigating in a federal forum, they acknowledge that Plaintiffs would have an adequate remedy in state court. (Resp., Dkt. 92, at 7). They also note the potential for inefficient parallel litigation and inconsistent obligations if Plaintiffs were to file a separate lawsuit in state court, as Plaintiffs allegedly intend to do "irrespective of this Court's ruling." (Resp., Dkt. 92, at 6–7). Given the existence of an adequate remedy in state court, the potential for inefficient parallel litigation and inconsistent obligations, and Plaintiffs' own choice in moving for joinder to destroy their chosen forum, the Court concludes that the equities weigh in favor of joining Lonestar.

Thus, after considering the law, the parties' arguments, and the record, this Court concludes that the *Hensgens* factors weigh in favor of granting Plaintiffs' motion for joinder. Because Lonestar is a nondiverse defendant, the Court must now address the question of its jurisdiction.

### III. DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION

District courts have original jurisdiction of all civil actions between citizens of different states where the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Joining Lonestar to this case destroys diversity jurisdiction. (Mot. Joinder, Dkt. 88, at 5) ("Lonestar is a Texas entity and its joinder will destroy complete diversity."). After considering the Defendants' lack of opposition to joining Lonestar and balancing the Defendants' interest in maintaining the federal forum with the competing interest of avoiding parallel lawsuits, the Court grants Plaintiffs' motion to join Lonestar.

With the addition of Lonestar, this Court no longer has diversity jurisdiction. 28 U.S.C. § 1332(a)(1).

Accordingly, this case shall be dismissed without prejudice pursuant to 28 U.S.C. § 1332(a)(1).

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiffs' motion for leave to join Lonestar, (Dkt. 88), is **GRANTED**. Because joinder destroys diversity and this Court's jurisdiction, **IT IS FURTHER ORDERED** that this action be **DISMISSED** for lack of subject-matter jurisdiction.

**SIGNED** on October 7, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE